**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Davis, Lori Davis,<br><br>               Plaintiffs,<br><br>v.<br><br>Wells Fargo Advisors LLC, Wells Fargo Bank, N.A., Unknown Parties,<br><br>               Defendants. | No. CV-13-01963-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendants Wells Fargo Advisors, LLC and Wells Fargo Bank, National Association's Motion to Strike Class Allegations from Complaint and to Compel Arbitration (Doc. 8), the Response (Doc. 15), and the Reply (Doc. 18). For the following reasons, the Plaintiffs' class allegations will be stricken and arbitration will be ordered.

**I.    FACTS**

Plaintiffs Christopher and Lori Davis are a married couple living in Arizona. Both are practicing attorneys. In 2007, the Davises earned around $2 Million in contingency fees from two lawsuits. The money was substantially more than the Davises usually earned in a year, and they deposited the money in an investment account with Wachovia Securities.

After consulting with an accountant, the Davises were advised that they would owe approximately $600,000 in taxes on their income from 2007. Rather than pay their tax obligation straight out, their broker at Wachovia Securities suggested they leave the

full amount of their earnings in the investment account and pay the tax obligation with an Asset-Backed Line of Credit ("ABLOC") provided by Wachovia Bank. The ABLOC functioned as a loan collateralized by the investment account, and their broker suggested the payments on the ABLOC loan could be made from profits earned on the investment account. The Davises believed this arrangement would allow them a better overall return on investment.

To obtain the ABLOC loan, the Davises entered into a separate agreement with Wachovia Bank for a $700,000 credit line, which they drew on in 2008 to satisfy their 2007 tax debt obligation. During that time, Wachovia was purchased by Wells Fargo & Company. Wachovia Bank then became Wells Fargo Bank and Wachovia Securities became Wells Fargo Financial Advisors, LLC.

### A. The Davises' Agreements with Wells Fargo Financial Advisors

The Davises entered into an Asset Advisor Client Agreement with Wachovia Securities to engage Wachovia's investment management services. (Doc. 8, Exh. C.) The agreement provided that Wachovia would work with the Davises to manage their investments and accomplish their financial goals. (*Id*. at ¶ 5.) Over the years, the Davises signed three versions of that agreement: an Asset Advisor Client Agreement with Wachovia Securities on January 4, 2005 (Doc. 8, Exh. C); an Account Agreement with Wachovia Securities on March 29, 2007 (Doc. 8, Exh. D); and another Asset Advisor Client Agreement on February 9, 2008 (Doc. 15, Exh. G).[1] The 2008 Agreement contained essentially the same investment management terms as the earlier agreements but notified the Davises that, in the event of a successful merger between Wachovia and Wells Fargo, their Agreements would be assigned to Wells Fargo & Company, the parent company of Wells Fargo Bank and Wells Fargo Financial Advisors. (Doc. 15, Exh. G ¶ 22.) In the 2008 Asset Advisor Client Agreement, the investment account was entitled

---

[1] Wells Fargo later sent the Davises something entitled "Account Profile/Investment Policy" in March 2010, which was accompanied by a letter saying it reflected changes the Davises had made to their account. (Doc. 15, Exh. H.) It was similar to the earlier Client Agreements, except that it went unsigned and contained no arbitration provision. Neither party argues the agreement is binding.

1  "WBNA Collateral Acct FBO Chris Lori Davis." (*Id.*)  The Davises assert this agreement was necessary to identify their investments as collateral for the ABLOC loan, but Wells Fargo claims the 2008 Agreement was executed only to position Wells Fargo as Wachovia's successor.  Except for the title, nothing in the 2008 Asset Advisor Client Agreement mentions the ABLOC loan.

All three agreements contained nearly identical pre-dispute arbitration clauses, requiring the parties to arbitrate any disputes arising between the parties that concerned "any transaction or the construction, performance or breach of this Agreement or any other agreement between us, whether entered into prior to, on, or subsequent to the date of the Agreement." (Doc. 15, Exh. G ¶ 25; *see also* Doc. 8, Exh. C ¶ 22, Exh. D ¶ 19.) The agreements explicitly exclude class actions from the arbitration requirement. (*Id.*)

### B. The Davises' Agreements with Wells Fargo Bank

In March 2008, the Davises executed an Asset Advantage Agreement with Wachovia Bank. (Doc. 8, Exh. A.)  The Asset Advantage Agreement outlined the terms of the ABLOC loan and assigned the securities in the Davises' investment account as collateral for the loan.  The agreement contained an arbitration provision which allowed either party to elect binding arbitration of claims:

> (1) under local, state or federal law whether based on a constitution, statute or regulation, in contract, tort or otherwise, and whether for money damages, penalties, or declaratory or equitable relief; (2) relating to the validity, enforceability, interpretation, or scope of this arbitration provision; (3) between the Parties, or between a Party and another Party's employee, agent, parent, subsidiary, affiliate, licensee, successor, assign, or heir; (4) relating to any phase of this loan transaction including any subsequent modification, extension or renewal of this Agreement; or (5) relating to the interpretation, performance or breach of any provision of this Agreement or any other document prepared or submitted for this loan transaction, the sale and/or financing of any ancillary products or services, or to the conduct of any Party to this loan transaction.

(Doc. 8, Exh. A ¶ 38) (emphasis added).  In the same agreement, the parties also waived their right to bring any claims on behalf of, or as members of, a class:

> All Claims will be arbitrated on an individual basis. No Party will participate as a representative or member of any class of claimants with respect to any Claim.

(Doc. 8, Exh. A ¶ 38.) The Davises executed a second Asset Advantage Agreement in February 2011, this time with Wells Fargo Bank, which contained a materially identical arbitration provision.

### C. The Davises' Suit

The Asset Advantage Agreement contained a safeguard for the bank. If at any point the value of the collateral securities fell below a preset percentage of the outstanding loan obligation, the bank retained the right to accelerate the debt and liquidate the securities. The securities could be liquidated even when timely payments were maintained on the loan balance. Beginning in 2008, the stock market entered a downturn. Over the next few years, in order to maintain the value of their securities as a certain percentage of the outstanding loan balance, the Davises were forced to pay down the principal by liquidating a substantial portion of their investment and engaging in trading practices that caused them substantial losses.

The Davises now assert claims against Wells Fargo Bank and Wells Fargo Financial Advisors, jointly and individually, alleging both entities trapped the Davises and other similarly situated consumers into damaging ABLOC loans. They allege violation of the applicable rules of the Financial Industry Regulatory Authority ("FINRA") (Count I), breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), misrepresentation/fraud/securities claims (Count IV), consumer fraud (Count V), negligence (Count VI), and unjust enrichment (Count VIII). They also request declaratory relief (Count VII). All counts are asserted against both Wells Fargo Advisors and Wells Fargo Bank. Counts I, II, III, IV, and V are brought as class claims.

Wells Fargo filed this Motion to Strike Class Allegations from Complaint and to Compel Arbitration (Doc. 8), arguing that the Davises are bound by the pre-dispute

arbitration provisions in their banking and investment contracts and by the class waiver in the banking contract, which prohibits the Davises from bringing class claims against any Wells Fargo entity. The Davises respond that the contracts with Wells Fargo Advisors and Wells Fargo Bank are void, making the arbitration clauses unenforceable. Even if the contracts are not void, the Davises assert the class waiver provision in their contract with Wells Fargo Bank does not restrict their right to bring a class action in this case.

## II.     Motion to Compel Arbitration

Both agreements signed by the Davises contain arbitration clauses. The Davises argue, however, that Wells Fargo violated the federal law governing margin requirements for credit maintained by a security, 15 U.S.C. § 78g, rendering both the investment and banking contract voidable under 15 U.S.C. § 78cc(b). Wells Fargo asserts that it did not violate any federal law when entering into the contracts, but that, even if it had, whether the contracts as a whole are void is a question for an arbitrator.

A contractual provision to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Although arbitration is favored by federal law, it is a matter of contract and the parties must agree to it. *AT&T Tech., Inc. v. Comm'n. Workers*, 475 U.S. 643, 648 (1986); *see* 9 U.S.C. § 3. "Determining whether the parties agreed to arbitrate the dispute in question involves two considerations: (1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of the arbitration agreement." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998).

Challenges to the validity of an arbitration agreement fall into two categories: (1) challenges specific to the arbitration provision itself that, for example, assert the arbitration provision violates some aspect of state or federal law; or (2) challenges to the agreement as a whole, such as asserting there was fraud in the inducement or that the entire contract is void because of an illegal provision. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). Under Section 4 of the Federal Arbitration Act,

1  federal courts may only adjudicate a challenge to the validity of the arbitration clause
2  itself and cannot adjudicate claims which challenge the validity of the contract as a
3  whole. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)
4  (citing 15 U.S.C. § 4). To be heard by a court, the challenge to the arbitration clause
5  must not be the same general complaint lodged against the entire contract, and, instead,
6  must allege why the arbitration clause itself, independent of the rest of the contract, is
7  invalid. *Id*. at 1000-01. Plaintiffs wishing to challenge the validity of an arbitration
8  clause may first raise the issue in their complaint or in response to a motion to compel
9  arbitration. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 998
10 (9th Cir. 2010).

11 The Davises' agreement with Wells Fargo Financial Advisors permits either party
12 to elect binding arbitration for any dispute "concerning any transaction or the
13 construction, performance or breach of this Agreement or any other agreement between
14 us, whether entered into prior to, on, or subsequent to the date of the Agreement."
15 (Doc. 15, Exh. G ¶ 25; *see also* Doc. 8, Exh. C ¶ 22, Exh. D ¶ 19.) The agreement with
16 Wells Fargo Bank is even broader, allowing either party to elect arbitration of a dispute
17 arising "(1) under local, state or federal law whether based on a constitution, statute or
18 regulation, in contract, tort or otherwise, and whether for money damages, penalties, or
19 declaratory or equitable relief . . . [or] (4) relating to any phase of this loan transaction
20 including any subsequent modification, extension or renewal of this Agreement."
21 (Doc. 8, Exh. A ¶ 38.) This dispute arises out of the ABLOC loan, which was first
22 promoted by Wells Fargo Advisors and implemented by Wells Fargo Bank. There can be
23 no doubt that, together, the arbitration clauses in both agreements mandate arbitration of
24 the Davises' individual claims in this dispute.

25 The Davises do not dispute that they agreed to arbitrate their individual claims
26 under their agreements with Wells Fargo Financial Advisors and Wells Fargo Bank.
27 Instead they argue the agreements are invalid because they violate FINRA, rendering
28 both contracts void. The Davises do not challenge the validity of the arbitration clause in

- 6 -

either contract. Nor do they make any allegations of unconscionability or fraud that could be fairly traced to the arbitration clause. *Cf. Bridge Fund Capital Corp.*, 622 F.3d at 998 (holding that a court may only adjudicate the validity of an arbitration clause when a plaintiff challenges the arbitration clause on grounds separate from the general allegations made against the contract as a whole).

Instead, the Davises allege the contracts, as a whole, are invalid because they violate federal law. Long-standing Supreme Court precedent provides, "Unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc.*, 546 U.S. at 445-46. The Davises' challenges to the contracts' validity must be heard by an arbitrator, not a federal court. Well Fargo's Motion to Compel Arbitration of the Davises' individual claims will be granted, and the Davises will be ordered to submit their individual claims to an arbitrator in accordance with the terms of their agreement.

### III. Motion to Strike Class Claims

The Davises' Complaint (Doc. 1-1) also alleges class claims against both Wells Fargo Bank and Wells Fargo Financial Advisors. Wells Fargo moves to strike the Davises' class allegations under Rule 12(f), Federal Rules of Civil Procedure, as barred by the agreement with Wells Fargo Bank. The Davises respond that class claims against both entities are permitted in federal court by their agreement with Wells Fargo Advisors. The agreement with Wells Fargo Bank provides, "Claims related to the validity or enforceability of the Class Wavier provision shall only be resolved in court." (Doc. 8, Exh. B ¶ 38.)

Pursuant to Rule 12(f), a party may move to strike from the pleadings "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Class allegations are generally not tested at the pleading stage and are instead scrutinized after a party has filed for class certification. *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012). However, if a class action cannot be maintained on the facts alleged in the complaint, "a defendant may

move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989-90 (N.D. Cal. 2009). Wells Fargo's Motion at this juncture is timely because whether the Davises' contracts permit them to bring class claims can be resolved on the pleadings.

The agreement with Wells Fargo Financial Advisors permits the Davises to pursue class claims in court. (Doc. 15, Exh. G ¶ 25; *see also* Doc. 8, Exh. C ¶ 22, Exh. D ¶ 19.) In contrast, the agreement with Wells Fargo Bank explicitly bars class claims. (Doc. 8, Exh. B ¶ 38.) Wells Fargo admits that if the Davises had brought a typical investment suitability class action against Wells Fargo Financial Advisors alone, the Davises' class claims would be governed exclusively by the contract with Wells Fargo Advisors and would not be barred. But the Davises allege class claims, jointly and individually, against Wells Fargo Advisors and Wells Fargo Bank over losses stemming from the ABLOC loan.

In deciding whether a dispute must be arbitrated, it must be determined "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2010) (internal citations and quotations omitted). Here, there is no challenge to the validity of the arbitration agreements, except to the extent that the Davises seek to invalidate the arbitration clauses by challenging the contracts as a whole, *see* § II, *supra*. The question, instead, is which agreement's arbitration clause encompasses the parties' dispute over the ABLOC loan transaction, and, in turn, whether the Davises may pursue their class claims in federal court.

The arbitration clause in the agreement with Wells Fargo Bank permits either party to elect binding arbitration of claims. (Doc. 8, Exh. A ¶ 38.) It encompasses not only disputes the Davises have with Wells Fargo Bank, but also, to the extent they relate to the ABLOC loan transaction, disputes with Wells Fargo Bank's affiliates. (Doc. 8, Exh. A ¶ 38, § (3).) It covers all claims "relating to the interpretation, performance or breach of any provision of this [ALBOC loan] Agreement or any other document

prepared or submitted for this loan transaction, the sale and/or financing of any ancillary products or services, or to the conduct of any Party to this loan transaction." (*Id*. at § (5).) It also reaches all phases of the loan transaction "including any subsequent modification, extension or renewal" and any claims brought "under local, state or federal law whether based on a constitution, statute or regulation, in contract, tort or otherwise, and whether for money damages, penalties, or declaratory or equitable relief." (*Id*. at §§ (1), (4).) In signing the Asset Advantage Agreement with Wells Fargo Bank, the Davises agreed that, "All Claims will be arbitrated on an individual basis. No Party will participate as a representative or member of any class of claimants with respect to any Claim." (Doc. 8, Exh. A ¶ 38.)

The arbitration clause in the agreement with Wells Fargo Financial Advisors covers "controversies or disputes which may arise between [the Davises] and [Wells Fargo Financial Advisors] concerning any transaction or the construction, performance or breach of this Agreement or any other agreement between us, whether enter into prior to, on, or subsequent to the date of this Agreement." (Doc. 15, Exh. G ¶ 25.) It provides, "No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action . . . until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) Client is excluded from the class by the court." (Doc. 8, Exh. C ¶ 22.)

Arbitration clauses encompassing disputes "arising out of or relating to" a contract are considered broad. *See Prima Paint Corp.*, 388 U.S. at 397-98 (holding that a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to [an] Agreement" was broad). When an arbitration clause utilizes broad, inclusive phrasing such as "related to," "every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute" should be sent to arbitration. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999).

1    The Davises' agreement with Wells Fargo Bank is exclusively dedicated to the
2    terms of the ABLOC loan.  The arbitration clause in the agreement with Wells Fargo
3    Bank covers all claims "relating to" the loan agreement, including those against affiliates
4    such as Wells Fargo Advisors. (Doc. 8, Exh. A ¶ 38, § (3).)  In contrast, the agreement
5    with Wells Fargo Financial Advisors is dedicated to investment services.  The only
6    mention of the ABLOC loan in any agreement made with Wells Fargo Financial
7    Advisors is the title given to the investment account in the 2008 Client Advisor
8    Agreement executed around the time of the ABLOC loan, "WBNA Collateral Acct FBO
9    Chris Lori Davis." (Doc. 15, Exh. G ¶ 22.)   Under the agreement with Wells Fargo
10   Financial Advisors, the parties agreed to arbitrate all "controversies or disputes which
11   may arise between" the parties "concerning any transaction or the construction,
12   performance or breach of this [investment services] Agreement or any other agreement
13   between us, whether entered into prior to, on, or subsequent to the date of the
14   Agreement." (Doc. 15, Exh. G ¶ 25; *see also* Doc. 8, Exh. C ¶ 22, Exh. D ¶ 19.)

The Davises' claims, described below, all relate to the ABLOC loan transaction:

- Count 1, violations of FINRA:  Davises allege both Defendants improperly classified the ABLOC loan in violation of "Regulation U of Section 7(d) of the Securities Exchange Act, 15 U.S.C. § 78g." (Doc. 1-1, ¶ 165.)
- Count 2, breach of contract:  Davises allege they were assured "that the banks would not liquidate or force the Davises to liquidate the positions in their $1.5 Million Account in the event of a default and that so long as the Davises continued to timely provide payments on their interest payment obligations, they would not be considered in default." (Doc. 1-1, ¶ 173.)
- Count 3, breach of the implied covenant of good faith and fair dealing:  both Defendants failed to properly label the ABLOC loan in accordance with federal law and to fairly represent the terms of the loan. (Doc. 1-1, ¶ 187.)
- Count 4, misrepresentation/fraud/securities fraud:  both Defendants failed to apprise the Davises of the risks of using securities as collateral. (Doc. 1-1, ¶ 191.)

- Count 5, consumer fraud: both Defendants misrepresented the terms of ABLOC loan agreement. (Doc. 1-1, ¶ 206.)

The Davises argue they should be allowed to pursue their class claims because the agreement with Wells Fargo Financial Advisors permits them. But that agreement only governs how Wells Fargo will work with the Davises to manage their investments and accomplish their financial goals. (Doc. 8, Exh. C ¶ 5.) This action does not stem from a dispute over how the Davises' money was invested, but instead arises out of the Davises' agreement concerning the ABLOC loan.

Although some of the Davises' class claims allege Wells Fargo Financial Advisors misled them when their advisor encouraged them to pursue the loan, the dispute relates primarily to the ABLOC loan agreement with Wells Fargo Bank. The Davises signed two separate agreements: one concerning their investment relationship with Wells Fargo Advisors and one concerning the loan agreement with Wells Fargo Bank. The gravamen of the action lies not with investment advice but with the implementation and terms of the ABLOC loan. In the agreement with Wells Fargo Bank, the Davises agreed to pursue all claims relating to the ABLOC loan, against both Wells Fargo Bank and any of its affiliates, on an individual basis. The contractual waiver of their right to arbitrate class claims is permitted by the Federal Arbitration Act. *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. \_\_ (2013). The Davises' class claims will be stricken.

IT IS THEREFORE ORDERED that Defendants Wells Fargo Advisors, LLC and Wells Fargo Bank, National Association's Motion to Strike Class Allegations from Complaint and to Compel Arbitration (Doc. 8) is granted.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER ORDERED that the Clerk shall enter judgment ordering Defendants Wells Fargo Advisors, LLC and Wells Fargo Bank, National Association and Plaintiffs Christopher and Lori Davis to arbitrate the disputes raised in this action in accordance with the terms of their agreement.

Dated this 8th day of April, 2014.

*(signature)*
Neil V. Wake
United States District Judge